SEALED

hmg.1.22.24
PAR: 2024R00016

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. GLR 24cr14 |
| JON JASON BRICENO, | * | (Conspiracy to Commit Money Laundering, 18 U.S.C. § 1956(h); Forfeiture, 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |
| Defendant. | * | |

## INDICTMENT

### COUNT ONE
### (Conspiracy To Commit Money Laundering)

The Grand Jury for the District of Maryland charges that:

### INTRODUCTION

At times material to the Indictment:

1. Defendant **JON JASON BRICENO** ("**BRICENO**") was a U.S. Citizen living in Katy, Texas.

2. Person A was a U.S. Citizen living in White Plains, New York.

3. PPJ International LLC (PPJ) was a Texas Limited Liability Company established by **BRICENO**.

4. Dinamo ZG Inc. ("Dinamo ZG") was a New York corporation established by Person A.

5. Zagreb Cro Inc. ("Zagreb Cro") was a New York corporation established by Person A.

6. Victim 1 was a government agency in Worcester County, Maryland.

7. Bank of America, N.A. ("BOA") and HSBC Bank USA ("HSBC") were financial institutions as defined in 18 U.S.C. § 20.

8.      BOA and HSBC maintained records concerning financial transactions in its accounts, including but not limited to records about the individuals controlling the accounts, and in some instances, surveillance video and/or images, and information about the identification documents used to open an account.

9.      Zelle was a digital payments network owned by multiple financial institutions in the United States. Zelle allowed users to electronically transfer money from their bank account to another registered user's bank account within the United States through a mobile device or online banking system.

## THE CONSPIRACY AND ITS OBJECT

10.     Beginning in or around November 2020, and continuing through in or around April 2021, in the District of Maryland, and elsewhere,

**JON JASON BRICENO,**

the defendant herein, did knowingly combine, conspire, agree, and have a tacit understanding with Person A and other persons known and unknown to the grand jury, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that said transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## PURPOSE OF THE CONSPIRACY

11.     It was a purpose of the conspiracy for **BRICENO** and his co-conspirators to unlawfully enrich themselves and others by (a) causing the deposit and transfer of proceeds of

2

schemes to defraud into bank accounts they controlled; (b) concealing the nature, location, source, ownership, and control of the proceeds; and (c) diverting and spending fraud proceeds for the personal use and benefit of the defendant and his co-conspirators.

## METHOD AND MEANS

12. It was part of the conspiracy that **BRICENO** opened bank accounts at BOA ("BOA x0869") and ("BOA x0474") in the name of PPJ International LLC for the purpose of receiving the proceeds of the scheme to defraud. **BRICENO** was the sole signatory on the accounts.

13. It was a further part of the conspiracy that Person A opened a bank account at HSBC ("HSBC x8092") in the name of Dinamo ZG for the purpose of receiving the proceeds of the scheme to defraud. Person A was the sole signatory on the account.

14. It was a further part of the conspiracy that Person A opened a bank account at HSBC ("HSBC x8734") in the name of Zagreb Cro for the purpose of receiving the proceeds of the scheme to defraud. Person A was the sole signatory on the account.

15. It was a further part of the conspiracy that **BRICENO**, Person A, and their co-conspirators used the HSBC x8092 account and the HSBC x8734 account to receive and deposit funds obtained as a result of a wire fraud scheme in which companies, individuals and others, including Victim 1, were deceived into sending money based on false and fraudulent pretenses, including financial transfers that the senders were led to believe were for the benefit of legitimate creditors.

16. It was further part of the conspiracy that **BRICENO** and his co-conspirators concealed and disguised the wire fraud by arranging for the proceeds to be routed to intermediate bank accounts controlled by **BRICENO** and his co-conspirators after being deposited in the HSBC x8092 account and the HSBC x8734 account, including BOA x0869 and BOA x0474.

17. It was further part of the conspiracy that **BRICENO** and his co-conspirators transferred money via Zelle, wire transfers, ATM withdrawals, and other financial transactions, resulting in interstate wire communications.

18. It was further part of the conspiracy that **BRICENO** communicated bank account information to co-conspirators, including via WhatsApp.

19. It was further part of the conspiracy that **BRICENO** notified co-conspirators, including Person A, when proceeds of schemes of defraud were deposited into bank accounts they controlled and directed the co-conspirators regarding the intermediate accounts to which the proceeds were to be transferred.

20. It was further part of the conspiracy that **BRICENO** directed co-conspirators to provide confirmation that the co-conspirators had in fact received and then transferred the proceeds as requested, including (1) photographs of online bank statements and online wire transfer confirmations; (2) mobile device screenshots of confirmations of transfers of funds via Zelle; and (3) mobile device screenshots of online bank statements.

21. It was further part of the conspiracy that, as payment for concealing and disguising the wire fraud by arranging for the proceeds to be routed through intermediate bank accounts, **BRICENO** and his co-conspirators took a percentage of the wire fraud proceeds of schemes to defraud, often in the amount of 10-20% of the proceeds.

22. It was further part of the conspiracy and scheme to defraud that **BRICENO** and his co-conspirators laundered more than $900,000 in proceeds of the scheme to defraud—including more than $284,000 from Victim 1—using bank accounts they controlled.

18 U.S.C. § 1956(h)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further alleges that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under the offense in Count One of this Indictment.

2. Upon conviction of the offense set forth in this Indictment, the defendant,

**JON JASON BRICENO,**

shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

### Substitute Assets

5. If, as a result of any act or omission of the defendant, any such property subject to forfeiture,

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

18 U.S.C. § 982
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

_Erek L. Barron_ (signature)
Erek L. Barron
United States Attorney

**SIGNATURE REDACTED**
Foreperson

1/23/24
Date